IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MONIKA SETTLEMYER,

        Plaintiff,

    v.

FARMERS NEW WORLD LIFE
INSURANCE COMPANY, a
Washington corporation,

        Defendant.

Case No. 6:14-cv-00356-AA
OPINION AND ORDER

---

Brandon G. Braun
Clinton L. Tapper
R. Scott Taylor
Taylor & Tapper
400 E. Second Avenue, Suite 103
Eugene, Oregon 97401
    Attorneys for plaintiff

Margie R. Lariviere
Gordon & Rees LLP
275 Battery Street, Suite 2000
San Francisco, California 94111

Sarah N. Turner
Gordon & Rees LLP
701 Fifth Avenue, Suite 2100
Seattle, Washington 98104
    Attorneys for defendant

Page 1 - OPINION AND ORDER

AIKEN, Chief Judge:

Defendant Farmers New World Life Insurance Company moves for summary judgment on plaintiff Monika Settlemyer's claims pursuant to Fed. R. Civ. R. 56(a). For the reasons set forth below, defendant's motion is granted and this case is dismissed.

## BACKGROUND

On February 13, 2011, John Medenbach applied for a $150,000 Simple Life Insurance policy with defendant, listing plaintiff as the beneficiary. Defendant's agent, Janell Solterbeck, assisted Mr. Medenbach with the application. Mr. Medenbach reported to Ms. Solterbeck, in relevant part, that he had no past history of drug or alcohol abuse, and the only health condition he suffered from or had been treated for within the past seven years was high blood pressure. Mr. Medenbach expressly acknowledged that "this [signed application] will become a part of the policy if issued by [defendant]." Solterbeck Decl. Ex. 1, at 4. He also "represent[ed] that [his] statements and answers [on the application] are true and complete to the best of [his] knowledge and belief." Id.

Ms. Solterbeck subsequently submitted Mr. Medenbach's application to defendant. Defendant screened Mr. Medenbach's application to determine if he met the threshold life insurance requirements. On February 23, 2011, defendant issued a Simple Life Insurance policy, which consisted of the policy itself, Mr. Medenbach's application, and the applicable riders and endorsements

Page 2 - OPINION AND ORDER

(collectively the "Policy").

On November 6, 2012, defendant received notice that Mr. Medenbach had died the previous day. Mr. Medenbach's Policy was assigned to defendant's claim examiner, Ray Woo. Because Mr. Medenbach died within the Policy's two-year contestability period, his claim was subject to an investigation.

On November 7, 2012, Mr. Woo wrote a letter to plaintiff expressing condolences for her loss; he explained that plaintiff was the beneficiary of the Policy and it was defendant's routine procedure to conduct an investigation into any death occurring within two years of the issuance of insurance, which would entail, amongst other things, the completion of certain paperwork necessary to process the claim.

On November 7, 2012, Mr. Woo sent an agent questionnaire to Ms. Solterbeck, who completed it on the same date. Ms. Solterbeck confirmed that she posed all of the application questions to Mr. Medenbach, that he responded to each question, and that she witnessed him signing the application. Ms. Solterbeck indicated further that she was not aware of any past medical history of Mr. Medenbach that was not disclosed on the application itself. Also on November 7, 2012, Mr. Woo faxed a request to Al Broyles, who worked at defendant's claim decision support department, requesting, in pertinent part, that he obtain Mr. Medenbach's medical and pharmacy records for the past 10 years.

On November 27, 2012, Mr. Woo sent a letter to plaintiff reminding her to send in claim forms. On December 3, 2012, defendant received a completed statement, an authorization to obtain medical information, and an initial death certificate from plaintiff. On December 4, 2012, Mr. Woo requested that plaintiff send an original certified death certificate when one became available. On December 13, 2012, Mr. Woo provided a status update to plaintiff, explaining that defendant had not yet received information sufficient to evaluate the claim. On December 17, 2012, defendant received plaintiff's signed statement, reflecting that, on the night of Mr. Medenbach's death, he drank between seven and nine beers and took trazodone and oxycodone. At that time, plaintiff also identified Mr. Medenbach's health care providers and pharmacy, and noted that he had past DUIs and attended Alcoholics Anonymous meetings.

From December 2012 through February 2013, defendant received reports from Mr. Broyles regarding the requested medical and pharmacy records. These records revealed that Mr. Medenbach had engaged in significant illegal drug use within seven years of completing his application and was currently taking the prescription medications oxycodone, wellbutrin, and trazodone. In addition, these records demonstrated that Mr. Medenbach suffered from or was being treated for a heart murmur and anxiety. On January 30, 2013, defendant received a certified copy of Mr.

Medenbach's death certificate, listing the official cause of death as accidental positional asphyxia due to mixed drug toxicity (alcohol and oxycodone). Throughout this period, defendant sent regular status updates to plaintiff.

On March 15, 2013, Mr. Woo submitted Mr. Medenbach's medical records to defendant's underwriter, Mary Barrett, for review. On March 19, 2013, Ms. Barrett submitted an underwriting report, specifying that Mr. Medenbach "failed to disclose the past diagnosis and history of: Heart murmur[,] History of drug abuse – meth and cocaine[,] [and] Anxiety." Barrett Decl. Ex. 1, at 8. As a result of these omissions, Ms. Barrett concluded that Mr. Medenbach misrepresented the answers to two questions on his application: one pertaining to his past medical history ("Question Five") and the other relating to his past substance abuse ("Question Ten").[1]

On March 20, 2013, Mr. Woo sent a follow-up questionnaire to Ms. Solterbeck, asking if she was aware of the fact that Mr. Medenbach had been treated for anxiety or a heart murmur, or was

_____

[1]Question Five asked, in relevant part, "[h]ave you, in the past seven years, had, consulted a physician or other healthcare provider(s) for, or been treated or hospitalized for or taken medication for any of the following: any diseases or disorders of the heart [or] any mental or nervous disorders (including depression, anxiety, or suicide)[?]" Solterbeck Decl. Ex. 1, at 2. Question Ten queried "[h]ave you, in the past 10 years, used illegal drugs, or consulted a healthcare provider or treatment facility for abuse of alcohol or drugs (including prescription drugs)?" Id. at 3.

taking trazodone, oxycodone, and wellbutrin. Ms. Solterbeck stated that she was neither cognizant of these issues nor had any prior knowledge of Mr. Medenbach's substance abuse. She reiterated that she asked Mr. Medenbach all questions on the application and did not have any other information on which to base the issuance of the Policy.

Thereafter, defendant considered all of the information before it and determined that the Policy should be rescinded based on Mr. Medenbach's material misrepresentations. On April 2, 2013, defendant's claim supervisor, Megera Malaby, sent a letter to plaintiff, again expressing condolences for her loss but nonetheless cancelling the Policy:

> On his application dated February 13, 2011, in the Medical and Supplemental Information section, Mr. Medenbach answered "yes" to question 5 and stated that he was diagnosed with High Blood Pressure and was prescribed medication. The medical records we received show that Mr. Medenbach consulted or received treatment for Anxiety, Heart Murmur and was also taking Oxycodone, Trazodone and Wellbutrin. Mr. Medenbach's medical records also show that he admitted using cocaine and methamphetamine within ten years of the application date . . . Our Underwriting Department has reviewed the medical history that occurred prior to the application date. Their determination was that John Medenbach's medical history was both significant and material to their evaluation of his insurability. If full details of John Medenbach's medical history, as outlined above, had been disclosed on the application as requested the policy could not have been issued on any basis. Given this we have no alternative but to consider the policy to be null and void from its inception date and refund the premiums to date in the amount of $1,015.35.

Malaby Decl. Ex. 14. Despite Ms. Malaby's solicitation, plaintiff

Page 6 - OPINION AND ORDER

did not provide any additional information relating to Mr. Medenbach or the Policy.

On March 3, 2014, plaintiff filed a complaint in this Court, alleging the following state law claims based on defendant's recision of the Policy: (1) negligence per se; (2) breach of contract; and (3) breach of the implied covenant of good faith and fair dealing. On September 2, 2014, defendant filed the present motion for summary judgment.

## STANDARD

Summary judgment is appropriate if the pleadings, depositions, affidavits, answers to interrogatories, and admissions on file, if any, show "that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Substantive law on an issue determines the materiality of a fact. T.W. Elec. Servs., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987). Whether the evidence is such that a reasonable jury could return a verdict for the nonmoving party determines the authenticity of a dispute. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The moving party has the burden of establishing the absence of a genuine issue of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). If the moving party shows the absence of a genuine issue of material fact, the nonmoving party must go beyond the pleadings and identify facts which show a genuine issue for

trial. Id. at 324.

Special rules of construction apply when evaluating a summary judgment motion: (1) all reasonable doubts as to the existence of genuine issues of material fact should be resolved against the moving party; and (2) all inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. T.W. Elec., 809 F.2d at 630.

**DISCUSSION**

This dispute centers on whether the misrepresentations on Mr. Medenbach's insurance application were material, such that defendant properly rescinded the Policy.

I.  Preliminary Matters

Before reaching the substantive merits of defendant's motion, the Court must address the parties' evidentiary objections.

A.    Plaintiff's Evidentiary Objection

Plaintiff asserts that Ms. Solterbeck's declaration and the exhibits attached thereto, except for Mr. Medenbach's insurance application attached as Exhibit 1, "constitute inadmissible parol evidence barred by both ORS 742.013 and ORS 742.042." Pl.'s Resp. to Mot. Summ. J. 3. Plaintiff raises an identical objection to "Paragraphs 7, 28, 29 and Exhibits 3, 12 and 13 of the Declaration of M[e]gera Malaby" and "Paragraphs 4, 5 and 6 of the Declaration of Mary Barnet[t]." Id. This evidence generally consists of Mr. Medenbach's medical records, information about the formation of the

Policy, and defendant's correspondences with plaintiff. Essentially, plaintiff contends that the Court may not consider information outside of the Policy in determining whether a material misrepresentation was made.

Initially, plaintiff either mistranscribed or miscontrued the statutes on which she relies: there is no Or. Rev. Stat. § 742.042 and Or. Rev. Stat. § 742.013 does not govern parol evidence.[2] Latter portions of plaintiff's opposition acknowledge as much. See, e.g., id. at 9 (citing to Or. Rev. Stat. § 742.013 for the proposition that coverage may be denied only if the misrepresentation is material). Further, to the extent she relies on the standard for insurance contract interpretation in arguing that the Court may not consider information outside of the Policy, plaintiff's argument is unavailing. There is no issue of insurance contract interpretation in the case at bar. See Pl.'s Resp. to Mot. Summ. J. 8 (recognizing that the Policy is "unambiguous"); see also Laird v. Allstate Ins. Co., 232 Or.App. 162, 166-67, 221 P.3d 780 (2009), rev. denied, 348 Or. 414, 233 P.3d 817 (2010) (articulating the standard for insurance contract interpretation). In addition, plaintiff has not cited to, and the Court is not aware of, any authority indicating that the parol evidence rule governs in the

---

[2] The Court presumes that plaintiff intended to cite to Or. Rev. Stat. § 743.042, as opposed to Or. Rev. Stat. § 742.042, which was the former version of Or. Rev. Stat. § 742.013. Ives v. INA Life Ins. Co., 101 Or.App. 429, 431 n.1, 790 P.2d 1206, rev. denied, 310 Or. 393, 798 P.2d 672 (1990).

circumstances presented here. <u>See</u> Pl.'s Resp. to Mot. Summ. J. 7.

Rather, it is axiomatic that courts evaluate evidence outside of the policy and application in resolving whether an insurer properly exercised its right to recision.[3] This Court has no way of determining whether Mr. Medenbach's application statements were, in fact, false without reference to external information that either confirms or contradicts those statements. Accordingly, courts addressing whether coverage may be avoided based on allegedly material misrepresentations routinely consider evidence beyond the insurance policy and application. <u>See, e.g.</u>, <u>Ives</u>, 101 Or.App. at 432-34; <u>see also</u> <u>Batzer Const., Inc. v. Boyer</u>, 204 Or.App. 309, 314, 129 P.3d 773, <u>rev. denied</u>, 341 Or. 366, 143 P.3d 239 (2006) ("[t]he [parol evidence] rule does not exclude evidence of . . . the circumstances under which the agreement was made, or to which it relates, as defined in ORS 42.220") (citation and internal quotations omitted). Plaintiff's evidentiary objection is denied.

B.    <u>Defendant's Evidentiary Objection</u>

Defendant argues that Exhibit 2 to plaintiff's attorney's declaration should be stricken because it is irrelevant, not properly authenticated, and consists of inadmissible hearsay. This exhibit contains a "2014 underwriting reference [guide] prepared by Farmers Life Insurance Company." Braun Decl. ¶ 4. Despite being

---

[3] Indeed, as addressed in section I(B), plaintiff relies on evidence from outside the Policy in opposing summary judgment.

expressly permitted to do so by LR 56-1(b), plaintiff did not file a surreply to defendant's evidentiary objection.

Initially, the Court notes that this document, although introduced by plaintiff and opposed by defendant, actually lends support to defendant's decision to rescind coverage. See, e.g., Braun Decl. Ex. 2, at 14 (an applicant with "[o]ne health condition, such as mild anxiety, mild asthma or high blood pressure that is well controlled on one medication" may still be eligible for Simple Life Insurance coverage, whereas an applicant with "[h]eart or circulatory disorders," a "history of . . . DUI," or "[m]ental health conditions other than mild stress, anxiety or mild depression" is not insurable). Further, defendant does not contest the accuracy of these materials. The Court agrees with defendant, however, that the relevance of these guidelines is questionable given that the Policy was issued in February 2011 and rescinded in April 2013.

Regardless, the Court declines to strike this document because it is the only non-duplicative evidence furnished by plaintiff in opposing summary judgment and does not affect the outcome of this case. As discussed in greater detail below, cancellation was proper due to Mr. Medenbach's material misrepresentations in regard to either Question Five or Question Ten. As such, the fact that plaintiff relies on these guidelines to establish that rescission was not mandated due to the timing of Mr. Medenbach's drug and

Page 11 - OPINION AND ORDER

alcohol abuse is not dispositive. See Pl.'s Resp. to Mot. Summ. J. 10 (citing Braun Decl. Ex. 2, at 29). Defendant's evidentiary objection is denied.

II.  Negligence Per Se Claim

     Defendant contends that plaintiff's negligence per se claim fails as a matter of law because "Oregon courts have unequivocally refused to allow this cause of action where the contract sets forth the duties of the parties." Def.'s Mem. in Supp. of Mot. Summ. J. 14-15 (citation omitted). Plaintiff responds that, "[u]pon review of the applicable law," her negligence per se claim is not cognizable. Pl.'s Resp. to Mot. Summ. J. 2. Defendant's motion is granted as to this issue.

III. Breach of Contract

     Defendant argues that plaintiff's breach of contract claim should be dismissed because "Mr. Medenbach falsely answered questions on his life insurance application regarding his illegal drug use, as well as diagnosis and treatment for a heart murmur, anxiety and depression," and these "misrepresentations were material." Def.'s Mem. in Supp. of Mot. Summ. J. 2. Defendant therefore invokes its right to rescission under Or. Rev. Stat. § 742.013 as a complete defense to plaintiff's breach of contract claim.

     As noted previously, this statute permits an insurer to "prevent a recovery under the policy" where the applicant or

Page 12 – OPINION AND ORDER

insured made a misrepresentation, concealment, or omission of fact on the application that was relied upon by the insurer and is "[m]aterial either to the acceptance of the risk or to the hazard assumed." Or. Rev. Stat. § 742.013(1). In other words, "to establish a right to rescind its insurance policy, an insurer must prove by a preponderance of the evidence that it issued the policy in reliance on an insured's false representations, which were material to the company's decision to accept the risk." Story, 179 Or.App. at 693 (citation and internal quotations and brackets omitted). "[T]o establish reliance, an insurer must show reliance in fact; reliance that was justified in light of the facts known to the insurer at the time; and the insurer's right to rely on the representations." Id. (citation and internal quotations omitted).

Although plaintiff contends that Mr. Medenbach answered Question Five truthfully, she concedes that he "falsely" responded to Question Ten. Pl.'s Resp. to Mot. Summ. J. 5, 8. It is further undisputed that this misrepresentation was contained in Mr. Medenbach's written application for insurance, which was indorsed upon or attached to the Policy when issued. Id. at 6-7, 9; Def.'s Mem. in Supp. of Mot. Summ. J. 4; Or. Rev. Stat. § 742.013(1)(a). Accordingly, this case hinges on whether Mr. Medenbach provided a false statement in regard to Question Five and, even if he did not, whether the admitted misrepresentation was material.

The Court answers both of these questions in the affirmative.

Page 13 - OPINION AND ORDER

Regarding Question Five, plaintiff focuses on the fact that Mr. Medenbach answered "yes" to assert that no misrepresentation transpired. Plaintiff's argument, however, fails to acknowledge that, where an applicant answers Question Five in the affirmative, an explanation is required in the "Additional Information" section. Solterbeck Decl. Ex. 1, at 2-3; Solterbeck Decl. ¶ 4. Indeed, Question Five is broad and solicits information about a number of conditions, each of which have different implications for defendant's life insurance coverage decision. Solterbeck Decl. Ex. 1, at 2; see also Braun Decl. Ex. 2, at 14.

Plaintiff's opposition is silent as to this issue, despite the fact that defendant expressly raised it in moving for summary judgment. Compare Def.'s Mem. in Supp. of Mot. Summ. J. 3, 12-13, with Pl.'s Resp. to Mot. Summ. J. 4-6; see also Bojorquez v. Wells Fargo Bank, NA, 2013 WL 605528, at *5 (D.Or. Nov. 7, 2013) ("[i]f a party fails to counter an argument that the opposing party makes in a motion, the court may treat that argument as conceded") (citation and internal quotations and brackets omitted). Regardless, the only condition that Mr. Medenbach divulged in the "Additional Information" section was his high blood pressure, even though his medical records plainly demonstrate that he had been diagnosed with a heart murmur and recently treated for mental health conditions. Solterbeck Decl. Exs. 1-3; Barrett Decl. Ex. 1; Malaby Decl. Exs. 7-8, 10-11; see also Leigh v. Consumers Nat'l Life Ins. Co., 240 Or. 290, 294, 401 P.2d 46 (1965) (granting

Page 14 - OPINION AND ORDER

judgment in favor of the insurer under analogous circumstances, explaining that "the applicant, because of his knowledge of the facts, is required to make in good faith full disclosure in answering the direct questions, and failure to do so is recognized in the law as fraud, vitiating the policy"). Thus, in answering Question Five, Mr. Medenbach concealed medical information relevant to the issuance of the Policy.

Moreover, Ms. Barrett's declaration establishes that defendant relied on Mr. Medenbach's misrepresentations to Questions Five and Ten, which were material to its assumption of risk. Critically, Ms. Barrett testified that she "reviewed all of Mr. Medenbach's medical records [and] identified several medical issues that Mr. Medenbach had not disclosed on the application that were material to [defendant's] underwriting." Barrett Decl. ¶ 3 & Ex. 1. Ms. Barrett also testified that "if the true information had been known [about Mr. Medenbach's medical history at the time of his application], the recommendation is that the application would have been declined under the underwriting criteria utilized by [defendant]." Barrett Decl. ¶ 5; Santilli v. State Farm Life Ins. Co., 278 Or. 53, 57, 562 P.2d 965 (1977) ("a false representation is material only if the insurer would not have accepted the application at the premium stated had a truthful answer been given"). Despite plaintiff's assertion to the contrary, this uncontroverted evidence is sufficient to establish both detrimental reliance and materiality. See Martin, 101 Or.App. at 42 (finding no disputed issue of

Page 15 - OPINION AND ORDER

material fact as to this issue where "[t]he affidavit of [the insurer's] executive vice president states that the presence of [the medical condition that was omitted on the application] is material to its acceptance of an insurance risk").

Further, plaintiff does not argue that defendant knew or should have known that the representations on which it relied were false and the evidence of record demonstrates that Ms. Solterbeck had no information, outside of Mr. Medenbach's application disclosures, on which to premise issuance of the Policy. Solterbeck Decl. ¶¶ ; Solterbeck Decl. Exs 1-3; see also Story, 179 Or.App. at 695-96 ("[i]In the absence of information that gives an insurer notice that an insurance applicant has misrepresented facts, an insurer has no obligation to investigate an applicant's representations") (citation and internal quotations omitted).

Finally, plaintiff's contention that defendant's actions were wrongful because its underwriting reference guide does not mandate recision if the applicant's drug use was not current is not persuasive. As noted above, while the relevance of these guidelines is dubious, they nonetheless clearly direct the denial of Simple Term Life insurance coverage where, as here, the applicant suffers from a heart disorder, a history of DUI convictions, or mental health conditions "other than mild stress, anxiety or mild depression." Braun Decl. Ex. 2, at 14. Regardless, "[t]he issue, and it is one of law, is whether the parties' contract allowed the insurance company to cancel." Martin, 101 Or.App. at 42 (emphasis

Page 16 – OPINION AND ORDER

added). The fact that, according to plaintiff, defendant's underwriting reference guide did not require rescission is therefore immaterial. By signing the application, Mr. Medenbach authorized defendant to cancel the Policy if he omitted any material medical information. Solterbeck Decl. Ex. 1, at 3-4; Malaby Decl. Ex. 1, at 3. That is precisely what transpired: Mr. Medenbach neglected to list his history of substance abuse, as well as his heart and mental health conditions. Id.; Barrett Decl. Ex. 1; Malaby Decl. Exs. 7-8, 10-11.

In sum, under both the Policy and Oregon law, defendant permissibly exercised its right to rescission. Defendant's motion is granted as to plaintiff's breach of contract claim.

IV.   Breach of the Implied Covenant of Good Faith and Fair Dealing

Defendant asserts that plaintiff's breach of the covenant of good faith and fair dealing claim cannot be sustained because the "sole bases of [plaintiff's] bad faith claim is the [defendant] refused to pay contract benefits that she claims are due under the [P]olicy." Def.'s Mem. in Supp. of Mot. Summ. J. 13. Oregon law implies a duty of good faith and fair dealing in the performance of every contract consistent with the objectively reasonable expectations of the parties. Uptown Heights Assoc. Ltd. P'ship v. Seafirst Corp., 320 Or. 638, 644-645, 891 P.2d 639 (1995). This duty, however, "cannot contradict an express contractual term nor does it provide a remedy for an act . . . that is expressly permitted by the terms of the contract." Hogan v. N.W. Trust

Page 17 - OPINION AND ORDER

Servs., Inc., 2010 WL 1872945, *6 (D.Or. May 7, 2010), aff'd, 441 Fed.Appx. 490 (9th Cir. 2011) (citation omitted).

Here, Mr. Medenbach agreed, under the explicit terms of the Policy, that the beneficiary - i.e. plaintiff - would not be entitled to insurance proceeds if he made any material misrepresentation during the application process. Solterbeck Decl. Ex. 1, at 3-4; Malaby Decl. Ex. 1, at 3. Defendant's enforcement of these terms is therefore not actionable. See Uptown Heights, 320 Or. at 645 ("[t]he party invoking its express, written contractual right does not, merely by so doing, violate its duty of good faith"). Furthermore, to the extent plaintiff maintains that defendant exhibited bad faith by relying on "prohibited evidence" and Mr. Medenbach's response to Question Five, her argument is without merit. Pl.'s Resp. to Mot. Summ. J. 10-11. As discussed in section I, defendant had a right, under both Oregon law and the Policy, to consider Mr. Medenbach's medical records in determining whether to provide benefits. In addition, as addressed in section III, the uncontradicted evidence of record reveals that Mr. Medenbach made material misrepresentations in relation to Question Five. Defendant's motion is granted in this regard.

## CONCLUSION

Defendant's motion for summary judgment (doc. 14) is GRANTED and this case is DISMISSED. Defendant's request for oral argument is DENIED as unnecessary. All pending motions are denied as moot.

IT IS SO ORDERED

Dated this ___3___ day of November 2014.

_____
Ann Aiken
Unites States District Judge